STRONG PUBLISHING CO. (FORMERLY CHICAGO DAILY NEWS CO.) AND CHICAGO DAILY NEWS, INC., PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22734. Promulgated October 28, 1929.

*Arnold L. Guesmer, Esq.*, for the petitioner.
*F. R. Shearer, Esq.*, for the respondent.

1094

OPINION.

STERNHAGEN: The deficiency was determined in respect of the Chicago Daily News Co., and notice under the statute was mailed to that corporation. It is still in existence, having changed its name to the Strong Publishing Co., and there is no doubt of its right to proceed here. But no determination has been made in respect of the Chicago Daily News, Inc., which is a separate corporation, and therefore it has no right to proceed before the Board and the Board is without jurisdiction as to it. In respect of the Chicago Daily News, Inc., the proceeding is dismissed. *Bond, Inc.*, 12 B. T. A. 339; *San Joaquin Fruit & Investment Co.*, 16 B. T. A. 1290.

The principal issue urged by petitioner is that for the purpose of determining its profits taxes its invested capital as defined by section 326, Revenue Act of 1918, has been inadequately determined by reason of the omission of the value at the time of acquisition in 1893 of circulation, good will, and Associated Press membership. Petitioner contends that these items were donated by Lawson, its principal stockholder, and therefore are a paid-in surplus within section 326 (3); that, as such, the value attributable to them is within statutory invested capital, even if they be intangible property; that circulation is tangible property under the statute, and, hence, that any restriction upon paid-in surplus as excluding intangible property is not applicable to circulation. Upon these propositions of law, petitioner predicated its introduction of evidence to prove the actual value represented by these items.

The evidence does not support the assertion that petitioner acquired these three alleged factors of value separately by way of gift from Lawson after its incorporation and acquisition of the alleged net tangibles as shown by a balance sheet. An auditor who recently examined the old books testified that they impressed him as being the books of a sole proprietorship. But, on the contrary, the exhibits contain formal statements made at the time of its incorporation that the petitioner succeeded to a preexisting corporation, and it is apparent that the News had been published by this corporation with all the assets and incidents of the business.

This aggregate was acquired for $150,000 par value of capital stock issued to Lawson, and it is to this transaction that the statute must be applied. In other words, there was paid in to the corporation for

stock or shares at the time of its organization property consisting of the cash and tangible property shown by the balance sheet (the actual value of which is not really shown by the evidence) and such intangible assets as the business had. If the balance sheet fairly indicates the value of the net tangibles, there was an asset value of $414,512 received, together with intangibles, for $150,000 of stock—an excess of $264,502. This has apparently been included by respondent in invested capital, and there is no room for such an apportionment as was applied in *St. Louis Screw Co.*, 2 B. T. A. 649; *Nature's Rival Co.*, 6 B. T. A. 294; *Charles Rubens & Co.*, 6 B. T. A. 626, to arrive at a paid-in surplus of tangibles. These items of circulation, press membership, and good will were not tangibles, and hence may not be classified under the statute as paid-in surplus, *Herald-Despatch Co.*, 4 B. T. A. 1096; *Daily Pantagraph, Inc.*, 9 B. T. A. 1173; *Daily Pantagraph, Inc.*, v. *United States*, Court of Claims decided June 10, 1929. Since this is so as a matter of law, it matters not that there was, as we are convinced, above the net tangibles, a large and substantial value in the business which may be attributed to its growing circulation, its established good will and its Associated Press membership. The respondent was clearly right in treating this value as intangible and excluding it from invested capital.

But there is enough already in the record to indicate that the situation is within section 327, requiring the special method of assessment provided in section 328. This issue has, however, been expressly reserved for further hearing under Rule 62, and the parties are therefore entitled to be heard upon it. We do not, however, regard Rule 62 as justifying a separation of issues so as to require findings of fact or discussion of law upon mesne questions which will in all probability disappear through special assessment. Here the mixed aggregate of tangibles and intangibles can not, we think, be satisfactorily segregated, and the apparently large intangible value resulting in income largely in excess of reasonable earnings on tangibles, apparently brings the case within the scope of subsections (c) and (d) of section 327, unless the contrary for other reasons appears at the further trial.

It may not be amiss, however, to express the view that the evidence is, in our opinion, not convincing that the values to be attributed to circulation, good will, and press membership are as large as claimed. While it is reasonable to believe with the several witnesses that these factors of value exist, it seems to us highly artificial to treat them each as separate from the others and susceptible of separate and independent valuations, the total of which is to be computed mathematically by adding them together. Several of the witnesses who

had long been in the newspaper-publishing business indicated that the recognition of these items was simply as factors in the appraisement of the business as a whole, and this seems to us to be the sound view. Furthermore, the earnings of the business up to the time of this incorporation in 1893 do not in our opinion sustain a valuation of the business as a whole sufficient to assign to these three factors the values claimed.

All of the remaining issues raised by the pleadings affect invested capital, i. e., taxes of prior years, building depreciation of earlier years, and leasehold exhaustion of earlier years. Since the determination of invested capital is entirely obviated in cases involving special assessment, these issues are not necessary for decision.

The proceeding will be restored to the calendar for further action by the parties under Rule 62.